STATE of Wisconsin, Plaintiff-Respondent,

v.

Billy L. THOMAS, Defendant-Appellant.

Court of Appeals

No. 79–1359–CR. *Submitted on briefs June 3, 1980.—Decided July 16, 1980.*
(Also reported in 295 N.W.2d 784.)

For the appellant, the cause was submitted on the briefs of *Isaias Ortiz,* of Milwaukee.

For the respondent, the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, with whom on the brief was *Kirbie Knutson,* assistant attorney general.

Before Decker, C.J., Moser, P.J., and Cannon, J.

DECKER, C.J. Defendant Billy Leon Thomas was convicted, after a jury trial, of four counts of armed robbery.[1] Two of the armed robberies involved pharmacists who were leaving their respective pharmacies after closing and locking the doors. The third armed robbery was at a Clark's service station, and the fourth armed robbery was of a Snap-On Tools salesman. Thomas complains that he was denied the right to confront his alleged accomplice. The latter did not testify at the trial, but witnesses testified that the accomplice had confessed to the robberies and named Thomas as a participant. We agree that evidence was constitutionally impermissible and reverse.

Two earlier trials of Thomas ended in mistrials. The first trial involved an armed robbery count of this mul-

[1] Thomas was also convicted of another armed robbery pursuant to a plea of guilty. This appeal does not raise issues with respect to that conviction.

tiple-count complaint which was eventually dismissed after the jury was unable to agree and "read in" when the defendant was sentenced for the four armed robbery counts of this case. The second trial involved these four counts of armed robbery and terminated in a mistrial. The trial of the four counts was immediately recommenced and ended with the jury verdict and conviction which is now appealed. The trial court failed to act on the defendant's postconviction motions which were denied by order entered by the clerk pursuant to sec. 809.-30(1)(g), Stats.

The armed robberies were committed by two black males, one taller than the other. The victims were, in some instances, able to identify the taller man, but in all instances could not identify Thomas as the shorter man.

The evidence which convicted Thomas was his confession of the commission of the four offenses as related by two Milwaukee police detectives. Thomas confessed after he had been arrested at his home pursuant to a warrant and taken to Milwaukee police headquarters. He admitted at trial that he had been fully advised of his constitutional rights pursuant to *Miranda v. Arizona*[2] three successive times by three different police officers before his confession. Although Thomas initially denied participation in the crimes, he was told that his accomplice, Quinn Johnson, had involved him. When Thomas learned that Johnson had named him as a participant in a number of crimes, Thomas asked and received permission to talk privately with Johnson. After the conversation, Johnson and Thomas, in the presence of each other, talked with police officers and identified a substantial number of crimes that they had committed. Thomas signed a confession of a crime other than the four which were the subject of this trial. Police officers later testi-

[2] 384 U.S. 436 (1966).

fied that the words "some more" in the confession referred to thirteen crimes specifically identified by Thomas as those in which he was involved. The thirteen crimes included the four which were the subject of this trial.

Thomas makes two complaints about the receipt of police testimony concerning his confession: first, that the reference to the thirteen crimes, which included crimes other than the four crimes for which he was on trial, was inadmissible other crimes evidence and thus "prejudicial"; and, second, that police testimonial references to the admissions of Quinn Johnson and his involvement of Thomas denied Thomas his right of confrontation of Johnson as his accuser.

In our examination of the extensive record in this case, we have been unable to find a reasoned explication of the trial court's exercise of its discretion to receive other crimes evidence over the defendant's motion to exclude it pursuant to secs. 904.04(2) and 904.03, Stats. The state has conceded that the record does not demonstrate that the trial court exercised its discretion by determining the admissibility of the evidence and then balancing its probative value against the prejudice to Thomas.[3] The inadequacy of the record in this respect requires us to make an independent review to determine whether it supports the trial court's decision.[4]

We conclude that the testimonial references to crimes other than those for which Thomas was on trial were appropriate and admissible pursuant to sec. 904.04(2), Stats., because:

---

[3] *State v. Draize,* 88 Wis.2d 445, 453, 276 N.W.2d 784, 788 (1979); *Hammen v. State,* 87 Wis.2d 791, 799, 275 N.W.2d 709, 713–14 (1979).

[4] *Hammen, supra* note 3 at 800, 275 N.W.2d at 714.

(1)  three of the four crimes for which he was on trial were committed by the simultaneous participation of one tall black male and one shorter black male;

(2)  Johnson was the tall black male and was identified by three[5] of the victims;

(3)  two of the crimes were armed robberies of pharmacists who were departing the premises after closing the store and locking the doors;

(4)  in three of the four crimes, the tall black male was obviously the leader and the shorter black male followed the directions of the other while committing the crimes;

(5)  in three of the four crimes, the taller man hit the victim in the head or about the body with either a brush or a gun, and also his fists;

(6)  in the third of the four crimes, the taller man forced ingestion of depressant drugs by the victim; and

(7)  in the fourth crime, the victim was also repeatedly hit in the head from behind by what he assumed was the gun that had been earlier pointed at him by the tall man who was joined in the crime by a second man who could not be identified by the victim.

We view the complete testimony of the victims of the three of the four crimes as substantial evidence of plan and identity of Johnson and Thomas as accomplices in the commission of the crimes.  Although the evidence from the victims could not have served to convict Thomas, the testimony of those victims provided the basis of the relevance of Johnson's and Thomas's presence at a joint interrogation that produced Thomas's admission of his participation in a multiplicity of armed robberies.[6]

---

[5] Two of the victims specifically identified Johnson; a third victim "identified the tall man."

[6] Thomas confessed to thirteen armed robberies and one theft.

We believe that

(1) the circumstances of Johnson's presence and Thomas's confession were relevant to the four crimes for which he was tried;

(2) the other crimes evidence was admissible pursuant to sec. 904.04(2), Stats., as proof of plan and identity;

(3) the probative value of the evidence was substantial;

(4) the prejudice to the defendant was not unfair; and

(5) the prejudice to the defendant did not substantially outweigh the probative value of the relevant evidence with respect to Johnson's presence when Thomas confessed and the circumstances in which his confession involved him in crimes other than the four for which he was on trial. In the context of the record in this case, the evidence was properly received.

Additionally, we note that the trial court fully instructed the jury with respect to its duty to ascertain whether the alleged self-inculpatory statements were made by Thomas and their trustworthiness. The jury was also instructed that evidence of Thomas's conviction of prior crimes (he testified to two) was only to be taken with consideration in ascertaining his credibility and that such evidence was not proof that he was guilty of the crimes with which he was charged and on trial. We believe that there is no prospect that the other crimes evidence was improperly utilized by the jury.

During the course of the testimony when reference was made to admission of other armed robberies, the trial court admonished the jury:

to remember the court's statement to you in the beginning that the references to other offenses, whether the night before or times prior, to be not important to you.

They are merely being told to you so that you get the total context of the remarks, and you are to consider them only in the sense that you are to focus upon the four armed robberies that the Defendant is on trial here for, and the other offenses are not to influence your decision in that regard in any way. They are only being told to you as part of the total context, so that you understand the context in which the remarks were made.

Thus the trial court fully instructed the jury on the limited use to which the other crimes evidence was to be put.

Detectives David Clemence and Dante La Porte testified that after Thomas was advised of his *Miranda* rights, he denied any involvement in armed robberies. The officers then testimonially set the scene for the introduction of testimony that Thomas subsequently confessed the crimes with which he was charged and others.

Each officer testified that after Thomas denied any involvement in the crimes, he was told that Quinn Johnson had confessed to armed robberies and had named Thomas as an accomplice-participant. The state has conceded that such testimony by the officers was error and we agree. Johnson did not testify at the trial and thus introduction of his confession through the officers' testimony was a denial of Thomas's constitutional right of confrontation of Johnson. *Douglas v. Alabama,* 380 U.S. 415, 419 (1965) ; *Virgil v. State,* 84 Wis.2d 166, 187–88, 267 N.W.2d 852, 863 (1978). The opportunity to cross-examine the police detectives did not fulfill the confrontation right of Thomas. *Brown v. United States,* 411 U.S. 223, 230 (1973) ; *Virgil,* 84 Wis.2d at 188, 267 N.W. 2d at 863.

Nonetheless, the state urges that the constitutional error is harmless and does not require reversal. *Brown,* 411 U.S. at 231; *Schneble v. Florida,* 405 U.S. 427, 430 (1972) ; *Virgil,* 84 Wis.2d at 190–91, 267 N.W.2d at 864–65. Although it is patent to us that the state attempted

to convict Thomas solely upon his confession, that evidence was intertwined with the testimony about Johnson's confession and his involvement of Thomas.

The avowed purpose of the state was merely to establish the context in which Thomas first denied and then admitted involvement in the armed robberies with which he was charged in this trial. The reference to Johnson's confession and his involvement of Thomas certainly bolstered the credibility of the testimony about the confession of Thomas, but fatally infected the conviction with constitutional error. Earlier we detailed the similarities in the four armed robberies involved for the purpose of establishing the relevance of other crimes evidence to establish plan and identity of the "Mutt-and-Jeff" armed robbers. That evidence was probative of Thomas's participation in the robberies, but it was virtually conclusive of Johnson's participation.

Although the record was replete with evidence of Johnson's involvement, only two items of evidence inculpated Thomas:

(1) Johnson's confession and his statement that Thomas participated in the robberies; and

(2) Thomas's confession.

The confession of Thomas was in its written form but required the extensive testimony of two detectives to explain its ambiguous phrase "and some more."[7] Certain-

---

[7] The pertinent part of the written confession was: "I got picked up at home. Rob them 41st and Sherman. I got $35. I had a pellet pistol. And some more."

The incident at 41st and Sherman is unrelated to these four armed robberies. The phrase "and some more" involved thirteen armed robberies and one theft. The testimony of the officers was that among the thirteen armed robberies, Thomas admitted to participating in the four armed robberies for which he was tried on this occasion. Detective La Porte testified that Thomas

ly, if believed by the jury, the evidence concerning the confession by Thomas was substantial enough to sustain his conviction. However, we believe that the jury could easily have convicted Thomas although it had reasonable doubts about the credibility of the testimony that he had confessed to these robberies. The evidence of Johnson's involvement in the crimes was so overwhelming that the jury may well have concluded that Johnson's inculpation of Thomas was proof enough of Thomas's participation on the theory that Johnson certainly knew who his accomplice was. If the jury reasoned in that fashion, it relieved itself of the necessity of determining the credibility and trustworthiness of the confession which was the only basis upon which conviction of Thomas could properly rest. We view that course of reasoning as probable and thus conclude that the prejudicial effect of Johnson's inculpation of Thomas weighed more heavily against Thomas than his own confession.

Detectives Clemence and La Porte each mentioned Johnson's inculpation of Thomas but once on direct examination, and each was interrogated on the subject but once on cross-examination. Nonetheless, we find that evidence so persuasive of Thomas' participation that we cannot assess the constitutional error as insignificant or harmless. Although Johnson's confession undoubtedly provided context to Thomas's confession, we believe that context could have been provided by testimony which would be constitutionally aseptic by avoiding reference to Johnson's confession and inculpation of Thomas. In that manner the confrontation violation could be eliminated by excluding reliance upon Johnson's uncross-examined credibility.

was incapable of expressing himself well in writing and was embarrassed at his inability. For that reason La Porte did not ask Thomas to more fully describe the events to which "and some more" referred.

The last claim of error made by Thomas is directed to the trial court's instruction that the only element of armed robbery that the state was required to prove was the defendant's identity. The trial judge instructed:

There are four counts and it is the same question in each count. We are talking strictly only the identification.

Normally, it is the function of the Court to instruct you as to what the elements of the offense of Armed Robbery are so that you could decide whether or not the defendant committed this offense directly or as party to a crime or by aiding and abetting.

In this case, it is not necessary to do that again and I will repeat, that the issue in this case is not whether the offense occurred but whether the defendant was one of the persons who committed the offense either directly or as party to a crime.

Specifically the defendant, in his brief, objects to the incompleteness of the instructions in the following manner:

The court in the instant case instructed the jury that it would not instruct as to all of the elements of the crime of armed robbery and that the only question was whether the defendant committed the armed robberies. The jury was not instructed on the other elements of the four offenses.[8]

The public defender representing Thomas apparently agreed that the sole and fundamental issue for determination by the jury was whether Thomas was a participant in the four armed robberies.[9] Because no objec-

---

[8] A review of the record establishes that the defendant at no stage in the trial disputed any element of the four crimes other than the identity of Thomas as a participant.

[9] The state contends that the public defender conceded in his opening statement to the jury that four armed robberies had occurred and only disputed participation in them by Thomas. A

tion was made to the instruction, the claimed error of incompleteness was waived. *Moes v. State,* 91 Wis.2d 756, 770, 284 N.W.2d 66, 72 (1979); *Bergeron v. State,* 85 Wis.2d 595, 604, 271 N.W.2d 386, 388 (1978); *Lambert v. State,* 73 Wis.2d 590, 607, 243 N.W.2d 524, 532 (1976); *Kutchera v. State,* 69 Wis.2d 534, 551, 230 N.W. 2d 750, 759 (1975).[10]

Because we view the receipt of Johnson's inculpation of Thomas as impermissible constitutional error, we reverse and remand for a new trial. We find it unnecessary to consider Thomas's implicit claim of plain error.

*By the Court.*—Order and judgment reversed and remanded.

retrial of these charges is required and for that reason we express our view of the record in this case that the failure to instruct on all elements of the crimes is a dangerous practice that may approach the prohibited direction of verdict in a criminal case and therefore requires extreme caution.

[10] We do not rely upon *Gyldenvand v. Schroeder,* 90 Wis.2d 690, 280 N.W.2d 235 (1979) or sec. 805.13(3), Stats., because the applicability of sec. 805.13(3) has been neither briefed nor argued. *See* sec. 972.01.