KUTCHERA, Plaintiff in error, v. STATE, Defendant in error.

*No. State 185. Argued June 5, 1975.—Decided June 30, 1975.*
(Also reported in 230 N. W. 2d 750.)

For the plaintiff in error there were briefs by *Howard B. Eisenberg,* state public defender, and *Ronald L.*

*Brandt,* assistant state public defender, and oral argument by *Mr. Brandt.*

For the defendant in error the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HANLEY, J. The following issues are presented upon this appeal:

1. Was it prejudicial error to allow certain witnesses to testify at the first trial when their names were not included in the state's list of witnesses furnished defense counsel under sec. 971.23 (3), Stats?

2. Was it prejudicial error to permit certain witnesses to testify at the first trial about conversations with the defendant about the burglaries when no written summary of these were furnished defense counsel after a request under sec. 971.23 (1), Stats., for such summaries?

3. Was it prejudicial error for the trial court to receive into evidence the unsigned confession of the defendant?

4. Did the trial court err in refusing to grant a change of venue for the second trial?

5. Should a new trial on all four charges in the second trial be granted because the evidence is not sufficient to support conviction?

6. Should a new trial be granted because the trial court failed to include the names of witnesses who received stolen property from the defendant in its instruction to the jury on the weight to be given to testimony of accomplices?

7. Should a new trial be granted in the interest of justice?

8. Should the judgments entered May 28, 1974, be reversed insofar as they modify the original sentences imposed?

*Witnesses not listed.*

Prior to the first trial, defense counsel made an offer to furnish lists of witnesses under sec. 971.23 (3), Stats. An exchange was made. The witnesses La Vern Michlig, Denzil Wirt and Russell Plant were not included on the list furnished defense counsel by the state. The defendant argues that the trial court committed prejudicial error in allowing these three witnesses to testify because they were not on the list.

The first witness called by the state was Joseph Bertasso, secretary of the Eagles Club. He testified that he secured the club June 18, 1973, and opened it June 19, 1973. He found that it had been burglarized. He testified he had not given the defendant consent to enter the premises after it was locked. On cross-examination, he said the president and the chairman of the board of trustees of the club could give such consent. On redirect, he said Denzil Wirt was the club's president and Russell Plant was chairman of the board of trustees.

Denzil Wirt and Russell Plant were called to testify that they had not given the defendant consent to enter the Eagles Club. La Vern Michlig, a route salesman for Canteen Service, testified as to the amounts in money and cigarettes taken from the machines at the golf course clubhouse and Trails End Tavern.

The court allowed these witnesses to testify on the limited bases stated by the district attorney. The witnesses Wirt and Plant were called merely to establish they did not authorize Mr. Kutchera's entry into the premises. La Vern Michlig's testimony was also limited.

In *Wold v. State* (1973), 57 Wis. 2d 344, 351, 204 N. W. 2d 482, this court said:

"Perhaps not all evidence which should be disclosed to the defendant need be excluded. The harm may be slight and avoided by a short adjournment to allow the defendant to investigate or acquire rebutting evidence. The penalty for breach of disclosure should fit the nature

of the proffered evidence and remove any harmful effect on the defendant."

This view was applied in the case of *Irby v. State* (1973), 60 Wis. 2d 311, 321, 322, 210 N. W. 2d 755. There this court said the trial court should have conducted a hearing to discover which witness the state intended to call after the district attorney furnished defense counsel with a list of 97 witnesses. This court went on to say, however:

". . . We point out when an error is claimed amounting to noncompliance with or abuse of the witness-list requirement, the error or abuse may in some cases be cured by the court granting the other party a continuance so he can adequately prepare for trial, *People v. White* (1970), 123 Ill. App. 2d 102, 259 N. E. 2d 357; *Gallegos v. State* (1968), 84 Nev. 608, 446 Pac. 2d 656, or by recessing for a period sufficient to allow counsel to interview the witness (which was done here). *People v. Armour* (1970), 133 Ill. App. 2d 126, 263 N. E. 2d 885; *People v. Knox* (1968), 94 Ill. App. 2d 36, 236 N. E. 2d 384. The granting of a continuance or recess is to be favored over striking the witness. *Williams v. State* (Fla. District Court of Appeal 1972), 264 So. 2d 106. In order to qualify for a continuance or recess, most courts require the continuance be requested in a timely fashion and that the defendant be surprised and prejudiced by the testimony. *People v. White, supra; State v. Gaines* (1967), 6 Ariz. App. 561, 435 Pac. 2d 68."

In this case, defense counsel never stated that he was either surprised or prejudiced by the state calling these witnesses at trial without listing them. Because no such showing was even attempted here, we conclude it was not prejudicial error for the trial court to allow these three witnesses to testify.

*Oral statements.*

Prior to trial, the defendant made a demand for a "written summary of all oral statements of the de-

fendant" which the district attorney intended to use at trial. This demand was made pursuant to sec. 971.23 (1), Stats. The defendant here argues that the trial court committed prejudicial error in allowing Wilfred Riehle to testify that the defendant told him they were going to hit the golf course clubhouse and in allowing Sue Iwen Menebroeker to testify that the defendant informed her of the three burglaries after they were committed because written summaries of these statements were not given to defense counsel. Sec. 971.23 (1), provides, in pertinent part:

". . . Upon demand, the district attorney shall furnish the defendant with a written summary of all oral statements of the defendant which he plans to use in the course of the trial. The names of witnesses to the . . . oral statements which the state plans to use in the course of the trial shall also be furnished."

The state argues that "oral statements" as used in sec. 971.23 (1), Stats., should be interpreted as only applying to statements which are the product of police interrogation and investigation. It argues that in this sense, "oral statements" is ambiguous and points to the drafting committee's comments. In the comment to sub. (2), it is said:

". . . The production of defendant's statements prior to trial will alert the defense to the necessity of bringing any motions to suppress such statements. (*See* State ex rel. Goodchild v. Burke, 27 Wis. 2d 244, 133 N. W. 2d 820.)" 42A W. S. A. 971.23, at p. 241.

The state argues that if this is the purpose of sec. 971.23 (1), Stats., it is plain that "oral statements" refers only to law enforcement officers because as a general rule only statements given to such officers would be subject to a motion to suppress. Under this interpretation, there would be no error in not providing oral state-

ments made to nonofficers like Riehle and Mrs. Menebroeker.

We think this is an over-restrictive interpretation of the statute. The statute applies to "all oral statements of the defendant." The reference to "all" oral statements would require the broader interpretation.

Regardless of whether the oral statements made to these two witnesses should have been disclosed by way of written summaries to defense counsel, the error would not require reversal here. In *Irby v. State, supra,* this court has indicated that a showing of prejudice and surprise is necessary to get even a recess or continuance. In the present case, the defendant has made no such showings.

In addition, there is no basis for reversal of the judgment of conviction herein since the testimony about the defendant's oral statements did not affect the substantial rights of the defendant. Sec. 274.37, Stats. Even without the testimony in question, there remains ample evidence of the defendant's guilt.

*Admission of the defendant's unsigned confession.*

An unsigned confession made by the defendant was received into evidence. The defendant argues that it should not have been received because it was obtained through improper police procedures which contravened his constitutional right against self-incrimination and because it was unsigned and not adopted by him.

The second basis is totally unfounded. While the defendant states in his brief that "Nowhere in the record can it be found that defendant adopted the confession as his own," prior to the confession being received into evidence, Sergeant Wolf, who took the confession, testified that the defendant read the statement and acknowledged it as correct. Therefore, the fact that the written confession was not signed is not significant. In *Williams*

*v. State* (Fla. 1966), 185 So. 2d 718, 719, it was said that ". . . A written confession is admissible in evidence although it is not signed by the defendant, so long as the defendant reads the statement and adopts it as his own. . . ." In 3 Wharton's, *Criminal Evidence* (Torcia, 13th ed.), p. 423, sec. 666, the rule is set forth as follows:

"A confession which was made orally and put in written form by a stenographer may be admitted in evidence, even though not signed by the accused, where the accused acknowledges that it is correct, or where the stenographer testifies that it is accurate."

The defendant's first argument is addressed to the voluntariness of the confession. In determining the voluntariness of a confession, the totality of the circumstances must be looked at. In *State v. Wallace* (1973), 59 Wis. 2d 66, 81, 82, 207 N. W. 2d 855, this court listed many of the factors to be considered. Bearing on the personal characteristics of the confessor, consideration is to be given to his age; his education and intelligence; his physical and emotional condition at the time of the interrogation; and his prior experience with the police. In determining the amount of pressure used to induce the confession, the following factors are important: the length of interrogation; delay in arraignment; general conditions where the interrogation took place; any extreme psychological or physical pressure; possible inducements, methods and stratagems used by the police; whether the confessor was lawfully arrested; and whether the confessor was apprised of his right to counsel and his privilege against self-incrimination.

From the totality of the circumstances, it is clear that the defendant voluntarily gave the statement in question. The officer who took the statement, Sergeant Wolf, testified the defendant was advised of his rights prior to giving the statement. The statement was taken on July 6th, the day after the defendant's arrest. His initial

appearance was also that day. The statement took twelve hours to take. However, two breaks were taken for lunch and dinner and the defendant was free to smoke and walk down the hall to get coffee. During the taking of the statement, Wolf was also involved with other matters so that he did not question the defendant continuously. The defendant told Wolf he would rather sit in Wolf's office than go to his cell. No restraints were put on his movements. The defendant never indicated he wished to stop the questioning and volunteered the information. Wolf testified that no promises with regard to getting the defendant out on bail were made. The defendant did not appear drunk when arrested or when the statement was given.

The defendant's original trial counsel said he advised the defendant his confession could not be introduced without his signature but that it might be introduced as an admission against interest if unsigned. The defendant was quite familiar with police procedures. He stated he believed that the confession could not be used unless signed but he had been told it would amount to an admission against interest and had been given a *Miranda* warning.

From the testimony adduced, the trial court was not in error in finding that the confession was voluntarily given.

*Change of venue.*

The defendant argues that the trial court erred in denying his motion for change of venue brought before both trials in this case. The defendant's motion for a change of venue for the second trial was based on two grounds: (1) The defendant's long criminal record including convictions for numerous felonies in Marathon county; and (2) the appearance in local newspapers of articles about the defendant's convictions at the first trial and subse-

quent sentencing. The trial court, in denying the second motion for change of venue, said:

". . . I think a thirty-six (36)-man panel will be taken from circuit court jury and be able to be selected to give Mr. Kutchera a fair trial without community prejudice."

It pointed out that it thought lawyers and judges have a misimpression that everyone knows what is going on in a courtroom and that it did not think the articles constituted community prejudice where the defendant could not find a fair trial.

On review, this court must look to the evidence presented at the hearing on the motion and examine the original documents to determine whether the trial court abused its discretion. *Jones v. State* (1974), 66 Wis. 2d 105, 109, 223 N. W. 2d 889.

The guidelines to be followed on review were stated in *Tucker v. State* (1973), 56 Wis. 2d 728, 733, 734, 202 N. W. 2d 897, quoting from *McKissick v. State* (1971), 49 Wis. 2d 537, 545, 546, 182 N. W. 2d 282:

"While abuse of discretion is the test on appeal, an appellate court has '. . . the duty to make an independent evaluation of the circumstances. . . .' In making such independent evaluation, this court has listed the factors relevant in determining whether a motion for change of venue should have been granted, including: '. . . The inflammatory nature of the publicity; the degree to which the adverse publicity permeated the area from which the jury panel would be drawn; the timing and specificity of the publicity; the degree of care exercised, and the amount of difficulty encountered, in selecting the jury; the extent to which the jurors were familiar with the publicity; and the defendant's utilization of the challenges, both peremptory and for cause . . . the participation of the state in the adverse publicity . . . the severity of the offense charged, and the nature of the verdict returned.' "

In this case, it is impossible for this court to make an independent evaluation of the circumstances based on

these considerations. No record was made of the *voir dire* examination. Also, the newspaper clippings are not in the record.

"... Without the nature of the publicity concerning the crime demonstrated by evidence in the record, there is no way for this court to determine its 'inflammatory nature,' the first of the factors to be considered before holding that trial court discretion has been abused." *State v. White* (1975), 68 Wis. 2d 628, 635, 229 N. W. 2d 676.

Because of this, the alleged error in the denial of change of venue becomes a complaint without substance or foundation as to facts in the record. *State v. White, supra.*

On the record before this court, it is impossible to determine there was an abuse of trial court discretion in denying the motion for a change of venue for the second trial.

*Sufficiency of the evidence.*

The defendant contends that the evidence produced at the second trial was insufficient to support the conviction. This is based on two theories: (1) The jury erroneously determined that the defendant was not intoxicated at the time of the burglaries so that he could not have formed the necessary intent; and (2) the testimony of George Obermeier is inherently incredible and cannot be the basis, as a matter of law, for these convictions.

This argument is without merit. This court has repeatedly held that the uncorroborated testimony of an accomplice is sufficient if the finder of fact finds the testimony credible. *Rohl v. State* (1974), 65 Wis. 2d 683, 692, 223 N. W. 2d 567; *Sass v. State* (1974), 63 Wis. 2d 92, 216 N. W. 2d 22.

This court has also said, with regard to the defense of intoxication under sec. 939.42, Stats., that:

". . . There is dispute in the testimony as to whether defendant was intoxicated, and the resolving of that dispute was for the jury to determine, not for an appellate court. The question for the trier of fact was not whether defendant had been drinking, and how much, but whether there was such degree of intoxication as 'negatives the existence of a state of mind essential to the crime.' . . . The degree of intoxication required is such degree that the person is 'utterly incapable of forming the intent requisite to the commission of the crime charged.'

"Capacity or incapacity to form the requisite intent may be inferred from the acts and conduct of a defendant as well as from testimony given by defendant or witnesses on his behalf. . . ." *State v. Nemoir* (1974), 62 Wis. 2d 206, 210, 211, 214 N. W. 2d 297.

Here, there was sufficient evidence to support the convictions. Obermeier testified that the defendant committed the burglaries with him. He thought the defendant was sober at Egdahl Oil Company and testified that the defendant remembered having left a tool in the building after they had returned to the car with the office machines. He testified that the defendant was sober at the Continental Gardens and Koo Koo Klub and that it was the defendant who pried open the machines at the Hut Tavern. The defendant had no trouble counting the money or carrying out things taken from the premises.

While other witnesses testified as to defendant's heavy drinking throughout June of 1973, and the defendant testified that he could not remember the incidents because he was drunk and in an alcoholic blackout, the jury could find from Obermeier's testimony alone that the defendant was not so intoxicated at the times of the burglaries as not to be able to form the specific intent to commit the crimes.

*Question of jury instruction.*

The defendant contends that he was unduly prejudiced at the second trial by the court's failure to include the

names of Lonnold Leary, Gary Prechel, Allen Fritz and Willie Riehle in its instruction to the jury on the proper weight to be given to the testimony of accomplices. All four of these witnesses received stolen property from the defendant after the burglaries.

The defendant did request that the trial court give Wisconsin Jury Instruction—Criminal, 245, on the testimony of accomplices. Attached to the request is a photocopy of that instruction. Neither the request itself nor the photocopy of the instruction specifies who were to be named as accomplices. The court did give instructions on the fact that the jury could consider any witness' interest in the outcome of the trial and the credibility of witnesses who had been convicted of crimes. Three of the four witnesses referred to testified that they had criminal records for receiving stolen property involved here. The instruction on the testimony of accomplices was given but only Obermeier was named as an accomplice. No objections were made to the instructions when they were given.

This court has generally held that a failure to timely object to jury instructions is a waiver of any alleged defects in those instructions. *State v. Cydzik* (1973), 60 Wis. 2d 683, 694, 211 N. W. 2d 421. We conclude that the defendant here waived his right to object to the trial court's instructions as given.

*New trial in the interest of justice.*

The defendant requests this court to grant a new trial in the interest of justice on the three counts in the first trial pursuant to sec. 251.09, Stats. This court has said:

"In order to grant a new trial in the interest of justice under sec. 251.09, Stats., this court must be convinced, viewing the record as a whole, that there has been a probable miscarriage of justice or that a new trial would lead to a different result." *Rohl v. State* (1974), 65 Wis. 2d 683, 703, 223 N. W. 2d 567.

A review of the record dispels any contention that a miscarriage of justice has occurred or that a new trial would lead to a different result in this case.

*Modification of sentences.*

The state has requested a review of the judgments entered May 28, 1974, insofar as they modify the original sentences imposed. The defendant's motion stated that when the sentences were imposed, sec. 57.06, Stats., allowed for "instant parole" but since that time, this court, in *Edelman v. State* (1974), 62 Wis. 2d 613, 215 N. W. 2d 386, had held that each sentence has a minimum parole eligibility of one year. The court indicated that the defendant's ability to be paroled was the basis for amending the sentence.

The state first argues that the motion to amend the sentences was not brought within ninety days after the imposition of sentence as required by *Hayes v. State* (1970), 46 Wis. 2d 93, 105, 175 N. W. 2d 625.

In *Lange v. State* (1972), 54 Wis. 2d 569, 573, 196 N. W. 2d 680, this court said:

". . . While the ninety-day period within which motions may be brought for the review of sentences, as set forth in *Hayes v. State* (1970), 46 Wis. 2d 93, 175 N. W. 2d 625, is not jurisdictional, we conclude that the motions in 1971 were brought too late to review, . . ."

Two days after the decision in *Lange,* this court decided *State ex rel. Warren v. County Court* (1972), 54 Wis. 2d 613, 197 N. W. 2d 1. It was again pointed out that the ninety-day limitation set forth in *Hayes* was not jurisdictional, but that it was regulatory on the exercise of that power.

In *State v. Foellmi* (1973), 57 Wis. 2d 572, 205 N. W. 2d 144, this court again recognized that the ninety-day period was regulatory rather than jurisdictional. There-

fore, it was said that in some cases sentences may be modified after the expiration of the limitation period. Modification of sentence does not depend on the original sentence being based on misinformation or some lack of information. However, it was said that (p. 582) :

" 'It is inappropriate for a sentencing court to make a change in an imposed sentence unless new factors are made known,' . . .
". . . A trial court should not reduce a sentence on 'reflection' alone or simply because it has thought the matter over and has second thoughts. It must base its modification on 'new factors' brought to its attention. . . ."

The defendant argues that the motion to amend sentences here was based on a "new factor" and, therefore, the court could entertain the motion after the ninety-day period. We agree.

It was the state that brought up the matter of instant parole at the time the original sentences were imposed. When the first sentence was imposed, the district attorney stated:

". . . And I think, Your Honor, that it is not improper for this court to impose a substantial sentence on the first count and, I don't know—the maximum sentence is ten (10) years—and ask that consecutive sentences be issued on subsequent counts because otherwise, with the law the way it is today, Your Honor, it is my understanding he could be paroled almost instantly otherwise. And I don't think it would be in the best interests of society, and I don't think it would be justice for this defendant to be paroled instantly. . . ."

Under the circumstances in this case, parole eligibility would be a new factor and the trial court properly exercised its discretion in modifying the sentence.

*By the Court.*—Judgments and orders affirmed.