COURT OF APPEALS
DECISION
DATED AND FILED

June 8, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2022AP446-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017CT180

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JULIE A. MINNEMA,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Waupaca County: RAYMOND S. HUBER, Judge. *Affirmed*.

¶1 BLANCHARD, J.[1] Julie Minnema appeals a judgment of conviction, following a jury trial, for operating a motor vehicle while intoxicated (OWI) as a second offense, resisting arrest, and bail jumping, and appeals a circuit court order

---

[1] This appeal is decided by a one judge pursuant to WIS. STAT. § 752.31(2) (2021-2022). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

denying her motion for postconviction relief on the grounds that she received constitutionally ineffective assistance of trial counsel. Specifically, she argues that the court erred in rejecting multiple allegations of ineffective assistance after holding an evidentiary hearing. I conclude that, in each instance, Minnema fails to show either that counsel's conduct constituted deficient performance or that it resulted in prejudice to her. In addition, as to those claims for which I assume deficient performance, Minnema fails to show cumulative prejudice sufficient to warrant a new trial.

## BACKGROUND

¶2    In December 2016, the State filed a criminal complaint charging Minnema with OWI and operating a motor vehicle with a prohibited alcohol concentration (PAC), each as a second offense. *See* WIS. STAT. § 346.63(1)(a) and (b). An amended complaint was filed in April 2019, which added one count each for resisting arrest and bail jumping. *See* WIS. STAT. §§ 946.41(1) and 946.49(1)(a).

¶3    At trial, the prosecution called the arresting officer, a deputy with the Waupaca County Sheriff's office, a phlebotomist, and an analyst with the State Crime Laboratory.

¶4    The deputy testified in pertinent part as follows. In December 2016, the deputy lived in a single-family residence that occupied property adjoining the apartment building property where Minnema resided with her then husband, David Noffke. The deputy was at his house eating lunch one day when he observed Minnema drive a pickup truck into the driveway of her apartment building and park. The deputy observed Noffke approach the truck, talk with Minnema, and then turn and walk away. Minnema got out of her vehicle, approached Noffke

2

with her "arms flailing," and "at some point" Minnema and Noffke engaged "in a physical altercation," "end[ing] up on the ground." The deputy got into his marked squad car, while wearing his uniform, and drove the short distance to Minnema's residence. Once at the residence, the deputy directed Minnema to come with him. Minnema's demeanor and failure to comply with instructions led the deputy to restrain her, eventually leading to her arrest as the alleged primary aggressor in an act of domestic-abuse disorderly conduct. While transporting Minnema to jail, the deputy smelled alcohol coming from her and noticed that her eyes appeared glassy and "blood shottish." The deputy asked Minnema if she would consent to field sobriety tests and she agreed. Minnema told the deputy that she had injuries that affected her balance and therefore the deputy performed only the horizontal gaze nystagmus test. The test indicated that Minnema was under the influence. The deputy asked Minnema if she would consent to a blood draw and she consented.

¶5 The phlebotomist who conducted the blood draw testified that she drew Minnema's blood less than one hour after the arrest. She also testified that Minnema was "a little bit more belligerent than most people" she drew blood from.

¶6 The State Crime Laboratory analyst testified that an analysis of the blood sample, conducted five days after collection, showed that Minnema's blood alcohol content was 0.282 grams per millimeter at the time of collection. Defense counsel asked the analyst about a potential "expiration date" that would have appeared on the vial used to draw and hold the blood. The analyst testified that each blood vial has a "guaranty date," which the analyst testified "refers to the date until which the manufacturer guaranties that [the vial] will pull sufficient volume to fill that specimen tube." She also testified that she did not know what

3

the "guaranty date" was on the vial used to draw Minnema's blood because the date label was covered by another label.

¶7        Minnema's defense was that she started drinking alcohol for the first time on the day of her arrest only after she arrived at her residence in the truck, before her encounter with the deputy. Therefore, she argued, she could not have been under the influence when she drove up to her apartment building. This defense depended on the following more specific testimony by Minnema and Noffke, both of whom testified to the following account.

¶8        Minnema pulled into the driveway at her apartment building and parked. Immediately, Noffke approached her and invited her up to their apartment. Minnema refused. Noffke took the keys to the truck that were resting on the center console and went up to their apartment. Minnema sat in the truck and opened a bottle of alcohol, which she had purchased on the way home. She "chugged" the alcohol quickly, hoping to "see stars," which was an attempt to cope with the stressful interaction she had just had with Noffke. Meanwhile, Noffke waited inside, watching Minnema through the window; he saw her open the bottle of alcohol and drink from it. After some time, Noffke went back down to see why Minnema had not joined him. He first noticed the smell of alcohol on Minnema's breath. He attempted to take Minnema's cell phone to see who she had been talking to while she was gone. Minnema got out of the truck to try to get her phone back from Noffke. A struggle ensued. Noffke tried to lock Minnema's keys in his truck. As they struggled, Noffke lost his footing and they fell to the ground. Minnema heard the deputy call for her to come over to talk to him. The next thing she knew the deputy grabbed her, slammed her into the hood of his squad car, and placed her under arrest.

¶9    The jury found Minnema guilty on all four counts. The circuit court entered a judgment of conviction on the counts of OWI, resisting arrest, and bail jumping.

¶10    Minnema filed a postconviction motion for a new trial on the ground that her trial counsel rendered ineffective assistance based on multiple allegations of deficiencies that Minnema renews on appeal. After holding multiple *Machner* hearings, the circuit court denied Minnema's motion for a new trial.[2] I include details regarding the court's reasoning on each issue in the discussion below. Minnema appeals.[3]

## DISCUSSION

¶11    Minnema contends that her trial counsel was constitutionally ineffective in four separate ways: (1) failure to demand, or in the alterative to review, discovery from the prosecution; (2) failure to object to the untimely filing of the prosecution's witness list and amendment of the criminal complaint; (3) failure to investigate the deputy's account of events, and the reliability of the blood vial; and (4) failure to object to the admission of purported "other acts"

---

[2] *See State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

[3] The charged conduct occurred in December 2016 but this appeal was not fully briefed until November 2022. Reasons for this extraordinary cumulative delay include the following. The initial criminal complaint was not filed until July 2017. Before trial, Minnema dismissed three defense attorneys, and trial did not occur until September 2019. Following trial, Minnema was appointed postconviction counsel by the State Public Defender's office but she chose to proceed pro se. After two *Machner* hearings were held in February and April 2021, the circuit court denied several of Minnema's motions, and Minnema initiated a pro se appeal from those rulings. Minnema then hired postconviction counsel, the appeal was dismissed without prejudice, and the case was returned to the circuit court. Another *Machner* hearing was held in December 2021, at which the court again denied Minnema's motion for a new trial, which is the basis for this appeal.

testimony. Minnema also argues that, even if trial counsel was not constitutionally ineffective based on any one alleged failure, the cumulative effect of deficient performance in multiple respects prejudiced the defense. After providing pertinent legal standards, I address Minnema's arguments in turn.

¶12 Whether counsel provided ineffective assistance is a mixed issue of law and fact. *State v. Thiel*, 2003 WI 111, ¶21, 264 Wis. 2d 571, 665 N.W.2d 305. "The factual circumstances of the case and trial counsel's conduct and strategy are findings of fact, which will not be overturned unless clearly erroneous; whether counsel's conduct constitutes ineffective assistance is a question of law, which we review de novo." *State v. Breitzman*, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93.

¶13 To prevail on a claim of ineffective assistance of counsel, Minnema must prove that defense counsel was both deficient and that the deficient performance prejudiced her defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). If the defendant fails on either prong, the court need not address the other. *Id.* at 697.

¶14 Counsel's performance is deficient if it falls "below 'an objective standard of reasonableness.'" *Breitzman*, 378 Wis. 2d 431, ¶38 (quoted source omitted); *see also Strickland*, 466 U.S. at 690. The burden is on the defendant to overcome the "strong presumption that trial counsel's conduct 'falls within the wide range of reasonable professional assistance.'" *Breitzman*, 378 Wis. 2d 431, ¶38 (quoted source omitted).

¶15 Moving to the prejudice prong, prejudice occurs when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *Strickland*, 466 U.S. at 694. "A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Id.* A lack of confidence arises when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. This court may consider the cumulative effect of several deficient acts or omissions which together undermine confidence in the outcome. *See Thiel*, 264 Wis. 2d 571, ¶60.

### I. Discovery Demand and Review

¶16 Before the attorney who represented Minnema at trial was appointed, two attorneys who previously represented her in this case both made discovery demands of the State. Trial counsel did not make an additional discovery demand and instead relied on a file provided to him by Minnema. Trial counsel testified at the *Machner* hearing that he discussed "the police reports" with Minnema, reviewed with Minnema her account of the facts and potential witnesses, interviewed Noffke, obtained medical records of injuries that Minnema had prior to her arrest, and then at trial elicited testimony from Minnema and Noffke regarding the preexisting injuries.[4] When asked whether counsel noticed missing information during his review of the file or during his preparation for trial, counsel testified that information regarding the timing of the deputy's arrival at his residence for lunch "wasn't clear," but that otherwise "everything else seemed to be there." Minnema testified at the *Machner* hearing that she did not see before trial any of the exhibits presented by the prosecution at trial. The postconviction

---

[4] Explaining the preexisting injury evidence, at trial Minnema's counsel made the following argument regarding the resisting arrest charge: what the prosecution characterized as resisting conduct was in fact merely a manifestation of Minnema's inability to comply with police commands due to preexisting physical injuries.

7

court said that it was hard for the court to identify which items of discovery trial counsel actually possessed before and during trial due to the fact that trial counsel turned over his entire file to appellate counsel without first copying it, with Minnema (then pro se) returning to trial counsel only some documents in preparation for the postconviction testimony of trial counsel. However, the postconviction court determined that, despite the lack of definitive clarity about the discovery in the possession of trial counsel, trial counsel was reasonably well prepared for trial based on all of the relevant evidence.

¶17    With this as background, Minnema argues that trial counsel failed in his duties to demand discovery and to read all portions of discovery that had a potential benefit to the defense. According to Minnema, counsel's failure to demand discovery and his alleged failure to review all discovery is what she calls "prima facie" deficient performance. *See Thiel*, 264 Wis. 2d 571, ¶37 (it was "deficient performance as a matter of law" for trial counsel "[i]n a felony case where the client potentially faces significant prison time" "to fail to read all portions of discovery that may have the potential to [provide] information that is either beneficial or damaging to the client's cause."). Although unclear, Minnema apparently contends that she was prejudiced because trial counsel was not prepared to address some of the State's trial evidence, because according to Minnema he first became aware of the evidence when it was presented at trial. Minnema bases this apparent argument on her postconviction testimony that she herself had not seen the State's trial exhibits before trial and the fact that trial counsel had relied only on discovery materials provided by Minnema. Minnema argues that, as a result, she was "uninformed about the case against her" and unable to "determine the best course of action" to defend herself. The State argues that there was no unfair prejudice or surprise because trial counsel received the

8

discovery file from the prosecution that had been maintained by Minnema and there is no assertion that trial counsel did not already have all materials discoverable under WIS. STAT. § 971.23. I assume without deciding that trial counsel's performance regarding discovery issues was deficient and conclude that Minnema has not established that trial counsel's failure to demand discovery and alleged failure to review it sufficiently prejudiced her defense.

¶18 Upon receipt of a discovery demand by the defense, the prosecution is obligated to disclose certain materials and information, including a list of witnesses that it intends to call at trial as well as physical evidence intended to be offered at trial. *See* WIS. STAT. § 971.23(1)(d). The prosecution has a continuing obligation to disclose additional witnesses and additional discovery materials. Sec. 971.23(7).

¶19 Minnema's discovery argument fails because she identifies no discovery materials which trial counsel would have had but for his failure to make a discovery request, nor does she point to specific evidence that counsel did have but failed to review. It is true that it is unclear what discovery trial counsel obtained in advance of trial. Yet the burden is on the defendant to show how trial counsel's deficient performance prejudiced the defense.

¶20 Illustrating the problem with Minnema's argument, she does not tie her specific point about trial counsel being unclear from discovery materials when the deputy arrived at his residence for lunch to a discoverable piece of evidence that would have told counsel when that occurred. Nor has she explained what trial counsel would have done differently at trial with that information. Minnema appears to imply that, had counsel made a discovery demand or reviewed the discovery materials, this would have revealed evidence that would have

9

undermined the officer's testimony about the amount of time that passed between Minnema parking her vehicle and getting into an altercation with Noffke that caused the deputy to appear on the scene. But, so far as Minnema develops the argument, it amounts to unsupported speculation.

## II. *Additional Charges and Untimely Disclosure of Witness List*

¶21    Minnema also argues that trial counsel was ineffective for failing to object to the amended criminal complaint and the late filing of the prosecution's witness list. Again I assume without deciding that counsel's performance was deficient and conclude that Minnema was not prejudiced by trial counsel's failure to make these objections.

### A. *Added Charges*

¶22    Minnema argues that trial counsel was ineffective for failing to object to the amendment of the criminal complaint to add charges, which she contends left her with insufficient time to prepare a defense to the additional charges and resulted in two additional convictions. According to Minnema, she was prejudiced because this left her unable to challenge the deputy's narrative and impeach his credibility based on accounts from witnesses "from the neighborhood" who might have provided exculpatory evidence.[5]

¶23    Summarizing background above, 21 months after the initial charge and five months before trial the prosecution amended the complaint to add one

---

[5] The State asserts that any appeal on the issue of the amended complaint was forfeited by trial counsel's failure to timely object. However, the failure to raise the issue is raised as a claim of ineffective assistance of trial counsel and therefore forfeiture could not apply.

charge each of resisting arrest and bail jumping. Trial counsel testified at the *Machner* hearing that he did not receive additional discovery relating to the additional charges. Trial counsel obtained the medical records documenting Minnema's injuries at the time she was arrested, but he did not directly employ the records at trial. Instead, he relied on Minnema's testimony regarding her injuries as evidence to support a defense that the conduct that the prosecution characterized as resisting arrest was in fact a manifestation of her inability to comply with police commands due to preexisting physical injuries. The circuit court rejected Minnema's claim on this point based on a lack of prejudice. The court noted that five months elapsed between the filing of the amended complaint and the trial.

¶24 The prosecution may amend a criminal complaint at any time prior to arraignment, or after arraignment, with leave of court, so long as the defendant is not prejudiced. WIS. STAT. § 971.29(1); *see also* **State v. Bonds**, 2006 WI 83, ¶17, 292 Wis. 2d 344, 717 N.W.2d 133. Rights of the defendant that may be prejudiced by an amendment are the rights to notice of the charges, a speedy trial, and the opportunity to defend against charges. **Bonds**, 292 Wis. 2d 344, ¶17.

¶25 Minnema fails to meet her burden of showing that trial counsel's performance prejudiced the defense for the following reasons. The timing of the amended charges did not prevent trial counsel from offering the defense to the resisting charge referenced above. Although counsel did not present Minnema's medical records at trial, counsel still presented this theory after discussing with Minnema her health history and reviewing the medical records with her. During his opening statement, trial counsel spoke of Minnema's alleged preexisting injuries and the deputy's failure to account for those injuries and questioned the deputy on cross examination about his awareness of her alleged preexisting

11

injuries. Counsel elicited testimony from Minnema and Noffke regarding Minnema's alleged preexisting injuries and how her interaction with the deputy was inhibited by those injuries.

¶26 Moreover, Minnema is not clear on what additional investigatory steps trial counsel should have taken to the advantage of the defense if he had received earlier notice that the prosecution would charge resisting arrest. Trial counsel testified that he met with Minnema in advance of trial and asked her if she was aware of potential witnesses, and Minnema named only Noffke. Based on the originally filed charges, Minnema was on notice from the start of this criminal prosecution of the importance of identifying witnesses to the only set of facts at issue—involving her conduct immediately leading up to her arrest—who might have exculpatory evidence regarding her activities and those of the deputy at that time. Without making reference to evidence in the record, Minnema now simply asserts that "no one from the neighborhood who may have witnessed the incident was available or could remember what they would have observed that day." Whatever Minnema intends to argue along these lines, it is not supported by evidence and it does not come close to meeting her burden of showing that, but for trial counsel's failure, the outcome of her trial would have been different.

¶27 Minnema takes the position that when the State added the new charges of resisting arrest and bail jumping this "widely broadened the evidence that would be permitted at trial," including evidence that would otherwise be irrelevant in "a simple OWI trial." Assuming this to be true to some degree, she does not elaborate on this general point in a way that advances her argument. For example, she does not identify specific evidence or explain how such evidence would have been excluded, as opposed to being introduced at a trial, that might have been conducted after a continuance.

¶28    In sum, Minnema does not establish that, but for counsel's failure to object to the amended complaint, the outcome of the trial would have been different.

### B. Prosecution Witness List

¶29    Minnema argues that trial counsel was ineffective for failing to object to the prosecution's untimely disclosure of its witness list. The day before trial the prosecution provided a list of the four witnesses whom it intended to call. She contends that the postconviction court erred in determining that trial counsel was not deficient on this issue because the court ignored pertinent context, namely, counsel's lack of experience and personal issues that he was allegedly having at the time. According to Minnema, failure to object to the untimely disclosure, in the context of counsel's lack of experience and personal issues, left Minnema unable to meaningfully participate in her defense. The State, like the circuit court in its analysis, emphasizes that the prosecution separately provided notice of its four trial witnesses through references contained in discovery materials and takes the position that none of the four trial witnesses listed on the late-filed list should have been a surprise to defense counsel.

¶30    Upon demand and within a reasonable time before trial, the prosecution must disclose a list of all witnesses that the prosecution intends to call at trial. WIS. STAT. § 971.23(1)(d). Unless the prosecution shows good cause for failure to comply with its disclosure obligations, the circuit court may consider excluding a witness or granting a recess or a continuance to the opposing party. *See* § 971.23(7m); ***Kutchera v. State***, 69 Wis. 2d 534, 542-43, 230 N.W.2d 750 (1975) (explaining benefits in some cases of granting a continuance).

¶31 Minnema fails to show that trial counsel was or should have been surprised by seeing on the list the names of any of the four prosecution witnesses. At the first *Machner* hearing, trial counsel testified that, before trial, he had the State Crime Laboratory results, which contained the names of both the phlebotomist and State Crime Laboratory analyst, and counsel also had the criminal complaint, which named the deputy. The only other witnesses on the State's witness list was Noffke, and Minnema was aware from the start that he was a witness to relevant events and that he was known to the State.

¶32 At the *Machner* hearing, trial counsel testified that "there was a lot of opportunity that we missed by having such a late … witness list." Minnema emphasizes this testimony as evidence that she was prejudiced by trial counsel's failure to object. But Minnema fails to fully develop what this meant and what effect it had on the trial. For example, had trial counsel objected and been granted a continuance, *see Kutchera*, 69 Wis. 2d at 543, Minnema does not explain what benefit this might have been to trial counsel or how interviewing the witnesses might have affected the outcome of the trial. Minnema does not establish that, but for counsel's failure to object to the late filing of the witness list, the outcome of the trial would have been different. Similarly, Minnema fails to explain how counsel's alleged inexperience and personal issues tend to establish that she was prejudiced by his failure to object to the untimely witness list, or for that matter that these alleged issues compounded any of the failures of trial counsel that she now claims.

### III. Failure to Investigate

¶33 Minnema also argues that trial counsel was ineffective for failing to investigate (1) evidence including the deputy's account of events and (2) the

reliability of the vial that was used to collect and hold the blood that was analyzed to establish blood alcohol content. I conclude that trial counsel's failure to investigate the deputy's timeline and observations was not deficient. I further conclude that counsel's failure to investigate the reliability of the blood vial, assuming that it was deficient performance, was not prejudicial.

¶34 Counsel must make reasonable investigations and reasonable decisions that potential investigations are unnecessary. *See Thiel*, 264 Wis. 2d 571, ¶40 (citing *Strickland*, 466 U.S. at 691). A "'decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to the counsel's judgments.'" *State v. Leighton*, 2000 WI App 156, ¶38, 237 Wis. 2d 709, 616 N.W.2d 126 (quoted source omitted). A defendant who alleges a failure to investigate "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the case." *Id.*

### A. The deputy's observations and timeline

¶35 Minnema argues that trial counsel was ineffective for failing to investigate the account that the deputy gave, including its timing aspects. Her argument boils down to the specific contention that trial counsel performed deficiently in failing to investigate how the deputy's viewpoint from his residence could have allowed him to see activity on the driveway at Minnema's apartment building. As support for this argument, Minnema directs us to trial counsel's postconviction testimony that he did not visit the area himself before trial and that a satellite image of the area obtained after trial shows what appear to be some sight-line obstructions between the deputy's residence and the area next to Minnema's apartment building where her altercation with Noffke took place.

According to Minnema, the introduction of such evidence at trial would have called into question the deputy's observations and therefore could have been used to impeach the deputy to raise a reasonable doubt. The State argues that Minnema's assertions regarding potential obstructions are speculative.

¶36 As additional background, the deputy testified at trial that there were some visual obstructions between his residence and Minnema's apartment building, but that enough of a line of sight remained for him to view the driveway area where Minnema drove and the altercation with Noffke took place. In addition, Minnema herself testified at trial that the deputy watched their residence from his residence "all the time." At the *Machner* hearing, Minnema's counsel noted that the altercation occurred in December, when obstructions due to foliage would have been at a low point. Counsel further explained that, because the deputy drove over to Minnema's residence on his lunch break, it only stood to reason that he had seen something of sufficient interest to merit the trip.

¶37 Based on the evidence presented at the postconviction hearing, the circuit court found that there were some obstructions to the sight line of the deputy but that none would have prevented the deputy from seeing what he testified to seeing.

¶38 Minnema provides no alternative theory to explain the deputy's trip to Minnema's residence, nor does she explain how the map would be used to impeach the deputy's testimony. Given the deputy's and Minnema's testimony at trial, and the circuit court's finding that the sight lines were only somewhat limited between the two residences, Minnema fails to show that it was unreasonable for counsel to instead investigate other issues consistent with the chosen trial defense. *See State v. Carter*, 2010 WI 40, ¶35, 324 Wis. 2d 640, 782 N.W.2d 695

16

(concluding it was not deficient performance for counsel to not investigate facts underlying a potential defense given that counsel had chosen to pursue a different defense based on distinct facts). Trial counsel's decision not to investigate or probe the deputy's account of events in some manner beyond what counsel did was reasonable and therefore not deficient.

### B. Reliability of the vial

¶39 Minnema argues that trial counsel was ineffective for failing to consult an expert to evaluate the reliability of the blood test. Minnema asserts that, putting to the side the blood alcohol content analysis, there is no evidence to support a conviction for impaired driving, whether an OWI or a PAC conviction. Thus, according to Minnema, trial counsel should have challenged the test's reliability and the potential that the vial was past its "guaranty date," which, to repeat, the State Crime Laboratory analyst testified "refers to the date until which the manufacturer guaranties that [the vial] will pull sufficient volume to fill that specimen tube." Minnema purports to rely on an article, not in the record, to argue that the "guaranty date" of a vial effects its vacuum pressure, as testified to by the analyst, as well as the vial's seal which, if compromised, may result in bacterial growth that would falsely elevate the blood alcohol results. The State argues that these concerns are speculative. Further, the State contends that Minnema could not have been prejudiced, because the defense conceded at trial that she had a blood alcohol content above the legal limit under the theory that, by her own account, she had "chugged" alcohol quickly, trying to get to the point at which she would see "stars."

¶40 The analyst testified at trial that she did not know what the guaranty date was for the vial used to draw Minnema's blood. She also did not testify at

trial on the topic of the potential for bacterial contamination that would affect the results when the guaranty date has passed. She was not called as a witness at the postconviction hearing. The postconviction court determined that the following issues were not developed: whether the blood vial had a label suggesting expiration when it was used to draw blood and, if so, whether that could have skewed the test results.

¶41 I reject Minnema's argument for the following reasons. First, she falls short of her burden in establishing that the significance of the potentially expired vial amounts to more than speculation. Minnema's argument is based on an incompletely sourced article that is, in any case, not a part of the record. The article-based part of Minnema's argument is an improper reference to extra-record evidence and I reject the entire argument as overly speculative. *See Pettit*, 171 Wis. 2d 627, 646 (confining an appellate court's review to the parts of the record provided to it).

¶42 Second, Minnema disregards the other trial evidence that supports an OWI conviction, based on evidence that she drove a vehicle on a highway and was under the influence of an intoxicant at the time she drove. *See* WIS. STAT. § 346.63(1)(a). Trial evidence to support an inference that Minnema drove while impaired by alcohol included: Minnema's own testimony that she bought alcohol on her way home; the timeline testified to by the deputy—that little time passed between Minnema's arrival in the truck at her residence and the deputy's interactions with her there; the deputy's perceptions of alcohol on her breath and at least somewhat blood shot eyes; and the deputy's testimony about her conduct. Even assuming that the test results based on the drawn blood could have been excluded based on a defect in the vial, the jury could reasonably determine that she drank before or while driving and thus drove under the influence of an

intoxicant as required for a conviction. Minnema does not establish that, but for counsel's failure to investigate the blood vial, the outcome of the trial would have been different.

### IV. "Other Acts" Testimony

¶43 Minnema argues that "other acts" evidence was submitted to the jury in violation of WIS. STAT. § 904.04(2) and that her trial counsel was ineffective for not objecting on that basis. *See State v. Sullivan*, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998) (setting out analysis for introduction of "other acts" evidence under Wisconsin law). Minnema argues that this alleged failure was not based on a strategic decision and was therefore deficient performance. I conclude that Minnema fails to establish that her counsel performed deficiently by failing to object.

¶44 The evidence at issue involved testimony that the jury heard regarding the following: incidents of domestic violence between Minnema and Noffke; a domestic abuse restraining order against Minnema; their divorce; Noffke paying for one of Minnema's previous defense attorneys in this case; and Minnema's history of drinking alcohol even when prohibited by court order from doing so.

¶45 The State argues that the lack of defense objections to any of this evidence could be justified as a strategic choice by trial counsel to present Minnema to the jury as someone driven to drink to excess as a victim of domestic violence at the hands of Noffke, providing context for her defense that she drank heavily only after pulling into her driveway. In addition, the State argues that Noffke's testimony about the prior domestic abuse incidents was not responsive to the questions put to him by the prosecution on cross examination, exceeded the

19

scope of the question asked, and opened the door to further exploration of evidence regarding domestic violence between Minnema and Noffke.

¶46    After providing some additional background of the specific other acts evidence given at trial and pertinent legal standards, I explain below that trial counsel was not ineffective because his decision not to object was related to a reasonable trial strategy and is therefore not deficient performance. *See* ***Breitzman***, 378 Wis. 2d 431, ¶75.

¶47    One piece of testimony at issue came from the prosecution's cross examination of Noffke. The prosecutor asked him about Minnema being "in a lot of trouble" and about a domestic abuse restraining order against Minnema, for the protection of Noffke, leading to the following, somewhat unclear exchange:

> Q: And you wanted to do your best to keep [Minnema] out of trouble, didn't you?
>
> A: Yeah. I didn't want a fight at that time.
>
> Q: You had a … domestic abuse restraining order against her, didn't you?
>
> A: Not restraining order, no.
>
> ….
>
> Q: Okay. And she was [not] supposed to drink?
>
> A: As far as I know, she wasn't. I don't think she was supposed to. I don't remember dates of the orders. But I do know … this, the restraining order was from the first domestic we had.

Noffke also testified in response to questions from the prosecution that he filed the petition for divorce and that he had helped Minnema by hiring one of her previous attorneys in this case.

¶48    Minnema also points to her testimony about her drinking that came in response to the prosecution cross examination.  She admitted to knowing that she was court-ordered not to possess or drink alcohol, that she did so anyway, and that she had done so many times "for relief."

¶49    Near the close of trial, the circuit court voiced concern about Noffke's testimony summarized above.  The court asked if "there's any curative instruction that anyone's asking for," to which trial counsel responded, "No."

¶50    Separately, the circuit court and the parties discussed whether to provide admitted exhibits to the jury or to provide them upon request of the jury.  The court expressed concern over providing Exhibit 3, which was a "domestic violence victim worksheet" completed by Noffke after Minnema's arrest in this case, to which trial counsel responded, "I want the whole exhibit in …."  The prosecution disagreed that Exhibit 3 should go back to the jury.  After reviewing the exhibit, the court noted concern about allegations that domestic violence had occurred on at least five other occasions and decided not to provide it to the jury up front but, if requested, to possibly provide a redacted version.

¶51    During the postconviction *Machner* hearing, trial counsel gave the following explanation of his choice to not object to the evidence summarized above:

> A: It was complicated.  Because in a sense we wanted to portray … Minnema as … somebody who was afflicted by domestic violence.
>
> And she … was in a domestic violent situation where [Noffke] said he wasn't going to be [at their residence].  But he was there.
>
> So then part of what happened, in our mind, was that she was triggered into drinking specifically when he took the [truck] keys from her.  So in a sense, [the other

acts] established a historical background of their relationship which I felt like she wanted to tell ….

The strategy to portray Minnema as someone driven to drink to excess as a victim of domestic violence also explains why counsel did not ask for a curative jury instruction. While the parties are not clear on the point, presumably this would have involved asking the jury to weigh other acts evidence only for specified purposes and not to consider it to prove that Minnema "acted in conformity with" a character trait. *See* WIS JI—CRIMINAL 275.

¶52 The postconviction court found that trial counsel's theory of the case was the following:

> I think we have to look at [the failure to object] in light of the theory of the defense and the defense that [Minnema] wanted to present – that she was an individual who was abused, a victim of domestic abuse, and when she sees her [then] husband it causes her to feel a need to consume alcohol and to consume sufficient alcohol to see stars.
>
> She indicated that she did that on multiple occasions ….
>
> ….
>
> With someone who's [seeking to prove] that she was not driving while under the influence, [but instead that she] simply was intoxicated after consuming alcohol after seeing her husband, the fact that other bad acts, for lack of a better word, were introduced to show that her husband triggers it was a logical explanation for the actions of defense counsel.

¶53 "[E]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." WIS. STAT. § 904.04(2)(a); *see also* WIS. STAT. § 904.03 (when relevant evidence may be excluded). Exclusion of other acts evidence "is based on the fear that an invitation to focus on an accused's character magnifies

the risk that jurors will punish the accused for being a bad person regardless of his or her guilt of the crime charged." *Sullivan*, 216 Wis. 2d at 783. The admissibility of other acts evidence is addressed with a three-step analysis. *Id.* at 771. First, the court considers whether the other acts evidence is offered for an acceptable purpose under § 904.04(2). *Sullivan*, 216 Wis. 2d at 772. Second, whether the other acts evidence is relevant. *Id.* Third, whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice or other danger. *Id.* at 772-73; *see also* § 904.03. If the court determines that "the other acts testimony was admitted erroneously," the court then considers "whether the error is harmless or prejudicial." *Sullivan*, 216 Wis. 2d at 773. When other acts evidence is introduced and it does not carry a danger of unfair prejudice the court may lessen the prejudicial effect by providing a limiting instruction to the jury. *State v. Payano*, 2009 WI 86, ¶99, 320 Wis. 2d 348, 768 N.W.2d 832.

¶54   A defendant claiming ineffective assistance of counsel for failure to object to "other acts" testimony must establish that trial counsel's decision not to object was inconsistent with a reasonable trial strategy, that is, that it was irrational or based on caprice to establish that counsel's performance was deficient. *See* **Breitzman**, 378 Wis. 2d 431, ¶75 (affirming denial of ineffective assistance of counsel claim for failure to object to "other acts" testimony because trial counsel's actions were based on a reasonable trial strategy and a jury instruction limited the risk of unfair prejudice). When the circuit court "determines that counsel had a reasonable trial strategy, the strategy is virtually unassailable in an ineffective assistance of counsel analysis." *Id.* (internal quotation removed).

23

¶55     Minnema's argument that the decision not to object to other acts evidence was not strategic is inconsistent with the findings of the postconviction court, which Minnema has not shown to be clearly erroneous. *See Thiel*, 264 Wis. 2d 571, ¶21.   Trial counsel provided a reasonable explanation for not objecting to the history of domestic violence with Noffke and Minnema's admitted history of drinking when prohibited by court order.  The court determined that this evidence provided a "logical explanation" for the defense theory that she was not driving while drunk but that instead she was compelled to chug liquor by her encounter with Noffke.

¶56     Regarding Noffke hiring Minnema's previous attorney, this does not constitute "other acts" evidence under WIS. STAT. § 904.04(2)(a).  Evidence that Noffke assisted Minnema in this way goes to his credibility as a witness, not to Minnema's character or propensity to act in a certain way.   It is classic impeachment evidence, an attempt to show bias.   *See* WIS. STAT. § 906.16 (evidence of bias admissible to attack witness credibility).

¶57     Minnema argues that trial counsel's failure to ask for a curative instruction regarding other acts evidence, such as WIS JI—CRIMINAL 275, is further evidence of ineffective assistance of counsel.  Trial counsel was given a direct opportunity to request a jury instruction, which he declined.  A jury instruction may be preferred but it is not required and need only be given at the request of counsel. *See Payano*, 320 Wis. 2d 348, ¶100.  As noted, trial counsel's reason for not doing so was to portray Minnema as a victim of domestic violence. Trial counsel used the other acts evidence at various points to set up the defense during opening, as evidence through testimony by Minnema, and during its closing.

¶58 I assume without deciding that declining a curative instruction was deficient performance because such an instruction would not necessarily have conflicted with what the defense presented at trial. However, Minnema fails to establish that counsel's failure to request a jury instruction prejudiced her defense under the facts here. The prosecution did not rely on the other acts evidence, either for the impermissible purpose of propensity evidence or even for a proper purpose such as motive. The prosecution instead focused on the credibility issue presented to the jury—whether to credit Minnema and Noffke's accounts or the deputy's account regarding points on which they differed—emphasizing inconsistencies between Minnema and Noffke's testimony and Noffke's statement to the deputy.

## V. Cumulative Prejudice

¶59 In determining whether a defendant has been unfairly prejudiced, the court may consider the aggregate effects of "multiple incidents of deficient performance in determining whether the overall impact of the deficiencies satisfied the standard for a new trial under *Strickland*." *Thiel*, 264 Wis. 2d 571, ¶60. Each alleged error of counsel must be deficient in order to be included in the calculus for prejudice. *See id.*, ¶¶60-61. As explained above, I conclude that two of the claimed errors by trial counsel were not deficient, namely the failure to further investigate partial sight obstructions and the failure to object to other acts testimony. As for instances in which I assume deficiency, I conclude that Minnema has failed to establish she was prejudiced by the accumulation of those errors because the errors do not undermine the reliability of the proceedings. *See Strickland*, 466 U.S. at 687; *see also Thiel*, 264 Wis. 2d 571, ¶61.

25

¶60 More specifically, Minnema fails to show that any of the following assumed deficiencies resulted in prejudice, individually or cumulatively, because her arguments regarding prejudice were speculative or undeveloped for lack of record support: the failure to conduct more discovery or more completely review discovery; the failure to object to the amendment of the complaint or the late filing of the prosecution's witness list; and the failure to investigate whether the blood vial had expired. Regarding the failure to request a cautionary instruction regarding other acts, I explain above why Minnema has not met her burden that this assumed deficiency was sufficiently prejudicial to warrant a new trial.

## CONCLUSION

¶61 For all these reasons, I reject Minnema's arguments that she received ineffective assistance of counsel and accordingly affirm.

*By the Court*.—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.